**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JENNENE STOICESCU,           )
and SAMANTHA CORBIN,      )
on behalf of Plaintiffs and the class  )
members described herein,       )
                                )
             Plaintiffs,     )
                                )
      v.                         )
                                )
BISON LENDING, doing business as  )
BUFFALO LAKE LENDING;     )
VELOCITY VENTURES GROUP,   )
LLC doing business as INFINITY   )
ENTERPRISE LENDING SYSTEMS; )    DEMAND FOR TRIAL BY JURY
and JOHN DOES 1-20;        )
                                )
      Defendants.       )

## COMPLAINT – CLASS ACTION

1.      Plaintiffs, Jennene Stoicescu and Samantha Corbin, bring this action against Defendants (a) Bison Lending, doing business as Buffalo Lake Lending; (b) Velocity Ventures Group, LLC, doing business as Infinity Enterprise Lending Systems; and (c) John Does 1-20 to secure redress for usurious and illegal loans (such as <u>Exhibits A-B</u>) made to Illinois residents.

2.      The loans are made in the name of Bison Lending, d/b/a Buffalo Lake Lending, via the website <u>www.buffalolakelending.com</u>.  (<u>Exhibit C</u>)  Velocity Ventures Group, LLC doing business as Infinity Enterprise Lending Systems ("Infinity"), and John Does 1-20 are involved in the making of the loans.

3.      Plaintiffs seek damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count I), damages pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count II – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1961 et seq. (Counts III-IV).

## JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction under 28 U.S.C. §1331 (general federal question), 18 U.S.C. §1964 (RICO), and 28 U.S.C. §1337 (interstate commerce). Jurisdiction may also exist under 28 U.S.C. §1332(d).

5.     This Court has personal jurisdiction over Defendants because they:

     a.     Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

     b.     Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

6.     Venue is proper because acts to obtain and collect the loans impacted Plaintiffs in Illinois.

7. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiffs

8. Plaintiff Jennene Stoicescu is a citizen of Illinois, residing in Arlington Heights, Illinois.

9. Plaintiff Samantha Corbin is a citizen of Illinois, residing in Chicago, Illinois.

### Defendants

10. Defendant Bison Lending, doing business as Buffalo Lake Lending ("Buffalo Lake Lending"), purports to be an entity chartered pursuant to the laws of the Crow Creek Sioux Tribe, a federally recognized Indian Tribe (the "Tribe"). Buffalo Lake Lending issues loans to consumers over the Internet through the website www.buffalolakelending.com. Buffalo Lake Lending uses the address P.O. Box 254, Ft. Thompson, SD 57339. It may be served at 100 Drifting Goose Way, Ft. Thompson, SD 57345.

11. Defendant Infinity is a limited liability company organized under Florida law which operates at 4864 Sparks Blvd., Sparks, NV 89436. Its registered agent and office is Corporate Creations Network Inc., 8275 South Eastern Avenue, #200, Las Vegas, NV 89123.

12. Defendants John Does 1-20 are other persons and entities involved in the lending activities complained of herein.

<u>**FACTS RELATING TO PLAINTIFFS**</u>

13.     On or about January 3, 2023, Buffalo Lake Lending made a $960 loan to Plaintiff Jennene Stoicescu at a stated annual percentage rate of 494.65%.  (<u>Exhibit A</u>)

14.     Plaintiff Stoicescu made payments on the loan.

15.     On or about February 16, 2023, Buffalo Lake Lending made a $950 loan to Plaintiff Samantha Corbin at a stated annual percentage rate of 687.74%  (<u>Exhibit B</u>).

16.     Plaintiff Corbin paid this loan in full as of June 22, 2023.

17.     Plaintiffs obtained the loans for personal, family, or household purposes and not for business purposes.

18.     Buffalo Lake Lending disbursed the loan proceeds via ACH into Plaintiffs' respective bank accounts in Illinois.

19.     The loan was to be repaid via ACH debits from Plaintiffs' respective bank accounts in Illinois.

20.     At no time did Plaintiffs set foot on Tribal lands.

21.     Plaintiffs obtained the loans via the Internet from Illinois.

22.     Defendants regularly made loans to Illinois residents on terms similar to Plaintiffs' loans.

23.     At no time did Buffalo Lake Lending have a license from the Illinois Department of Financial and Professional Regulation to make loans to Illinois residents.

24.     At no time did Buffalo Lake Lending have a bank or credit union charter.

25.     Buffalo Lake Lending regularly made loans to individuals in Illinois at such rates. On information and belief, it made over 100 such loans.

26.     The loans were obtained for personal, family or household purposes and not for business purposes.

27.     Defendants sought out Illinois residents for such loans.

28.     The loans were disbursed via ACH credits to the borrowers' Illinois bank accounts.

29. The loans were collected via ACH debits from the borrowers' Illinois bank accounts.

**INVOLVEMENT OF OTHER DEFENDANTS IN LOANS**

30. While Buffalo Lake Lending is purportedly owned by the Tribe, in reality, the Tribe has virtually nothing to do with the operation of the lending business and simply participates in what is often referred to as a "rent-a-tribe" scheme.

31. In a "rent-a-tribe" scheme, non-tribal payday lenders attempt to circumvent state usury laws by invoking the sovereign immunity available to Native American tribes.

32. While the non-tribal entities operate all substantive aspects of the business such as funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections for the high-interest loans, the tribe acts as a label or figurehead in exchange for what is often a relatively insignificant portion of the revenue generated.

33. In need of money, the Crow Creek Sioux Tribe attempted to rent out its sovereign immunity to non-tribal persons and entities who agreed to pay the Tribe a small percentage of each loan as a fee or commission.

34. The Tribe became a supplier in the rental market for sovereign immunity, making "rent-a-tribe" agreements with various investors.

35. In addition to Buffalo Lake Lending, at least the following Internet lenders have purported to operate as arms of the Crow Creek Sioux Tribe:

     a. Wahido Lending d/b/a River Valley Loans;

     b. Basswood Lending, d/b/a "Level Up Funding";

     c. Koda Lending, d/b/a Helpful Lending;

     d. Dakota Lending d/b/a MyLoanSite;

     e. Inazin Lending d/b/a Rise Up Lending.

36. On information and belief, the Tribe received less than five percent of revenues from the lenders in exchange for the use of its name.

37. Loan approval was made by the non-tribal owners of the lender.

38.     Loans are funded from bank accounts to which the Tribe has no access, and the loans are serviced and collected by nontribal entities off the Tribe's reservation.

39.     The essential business operations necessary to make the Buffalo Lake Lending loans are actually performed in other locations outside of the Tribe's jurisdiction and are made for the benefit of non-tribal investors.

40.     These operations include incoming and outgoing phone calls and  emails, review of loan applications, loan underwriting, payment processing, website maintenance, and marketing.

41.     Infinity is a "back-end" services vendor that provides software to analyze, underwrite, service, and collect high-interest loans.

42.     Infinity states that its software "can support your vision… and your  success. We have built the industry's best solution for Payday loan management." *See* https://www.fintechfinance.io/about-us.  "Our Business Rules Engine will meet your exact lending model and grow along  with you. Schedule ACH transactions and reminder messages for automatic payment processes. Follow-up reminders will keep your CSR's on-task when working customer accounts. Refinancing a loan is as easy as clicking a button. Infinity is built to manage your Payday loan product no matter where you are  lending."

43.     Payday Loan Manager is software for operating a payday lending website, including "an integrated ACH provider that automatically handles the crediting and debiting of your loans."

44.     Infinity's website, infinitysoftware.com, as well as paydayloanmanager.com are hosted on servers owned or managed by Infinity, with an IP address of 169.55.60.156. (Exhibit D)

45.     More than 100 different payday lending websites are hosted by Infinity on the same server, many of which claim sham "tribal" affiliations.

46.     Infinity's website even features testimonials from non-tribal individuals who are, nonetheless, listed as owners or executives of ostensibly "tribal" payday lenders.

47.     One such testimonial is from Dustin A. Dernier ("Dernier"), who is  identified as "CEO 605 Lending." (Exhibit E)

48.     Dernier states, "The Infinity Team has helped us grow our start up into something to be very proud of. The entire team has been there for us every step of the way." (Emphasis added.) *Id.*

49.     Another testimonial is from John Humphrey ("Humphrey"), identified as "COO DMP Investments." (Exhibit F)

50.     DMP Investments LLC is owned by the Texas payday loan magnate William C. Pruett ("Pruett"), who operates numerous payday lending businesses, including several operated under a "rent-a-tribe" model, including Sky Trail Cash, supposedly owned by the Lac du Flambeau Tribe in rural Wisconsin. It makes loans to consumers in many states at triple-digit rates.

51.     Humphrey states: "Your software platform provided the ideal mix of processing capacity, high availability, and resource scalability that each proved vital components throughout our implementation. We sincerely appreciate the relationship with our friends at Infinity Software and consider their software platform an indispensable resource in operational landscape." *Id.*

52.     Infinity's website features a video touting how its software features "end-to-end loan process automation" and can "automate the loan collection process for maximum results."

53.     Infinity thus provides and manages the software which underwrites and collects Buffalo Lake Lending loans, including the loans to Plaintiffs, and also manages the ACH transactions involving Plaintiffs' respective bank accounts in Illinois. The software was stored and ran on servers belonging to Infinity.

54.     Infinity received a portion of the profits from the Buffalo Lake Lending loans.

55.     Infinity provides such services to multiple Internet lenders.

56.     Other Defendants involved in the lending activities are named as Does 1-20.

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

57.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and

void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

58.     Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

59.     In addition, it is unlawful for anyone who does not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest.  205 ILCS 670/1.

60.     Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

61.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

62.     Illinois has a criminal usury statute that defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59.  It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

63.     Contracts made in violation of licensing requirements, which are intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally

usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

64.     The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569, *In the Matter of Money Mutual, LLC,* No. 12 CC 408; *In the Matter of Hammock Credit Services,* No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend,* No. 17 CC 133.

## RENT-A-TRIBE SCHEMES

65.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

66.     Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

67.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation—funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections—are performed by individuals and entities that are unaffiliated with the tribe.

68.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme to scheme, the number is almost always in the single digits.

69.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino &*

*Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

70.    To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

71.    These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

72.    Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

73.    Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

74.    Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y.) The conviction was affirmed in *United States*

*v. Grote*, 961 F.3d 105 (2d Cir. 2020).

75. The excessive interest charges imposed by Defendants were intentional.

## COUNT I – ILLINOIS INTEREST ACT

76. Plaintiffs incorporate paragraphs 1-75.

77. This claim is against all Defendants.

78. Defendants contracted for and collected loans at more than 9% interest from Plaintiffs and the class members, in violation of 815 ILCS 205/4.

79. Plaintiffs and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

80. Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

81. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via www.buffalolakelending.com at more than 9% interest (c) which is outstanding or was paid in full on or after a date two years prior to the filing of this action.

82. Plaintiffs may alter the class definition to conform to developments in the case and discovery.

83. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

84. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

85. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

86.     Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

87.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible; and

      b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

      i.     Damages as provided in 815 ILCS 205/6;

      ii.     Attorney's fees, litigation expenses, and costs of suit; and

      iii.     Such other and further relief as the Court deems proper.

### COUNT II – PREDATORY LOAN PREVENTION ACT AND ILLINOIS CONSUMER FRAUD ACT

88.     Plaintiffs incorporate paragraphs 1-75.

89.     This claim is against all Defendants.

90.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

91.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act. 815 ILCS 505/1 *et seq.*

### CLASS ALLEGATIONS

92.     Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

93.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via www.buffalolakelending.com at more than 36% interest (c) on or after March 23, 2021.

94.     Plaintiffs may alter the class definition to conform to developments in the case and discovery.

95. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

96. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

97. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

98. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

99. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible; and

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

i. Compensatory damages;

ii. Punitive damages;

iii. Attorney's fees, litigation expenses, and costs of suit; and

iv. Such other and further relief as the Court deems proper.

## COUNT III – RICO

100. Plaintiffs incorporate paragraphs 1-75.

101. This claim is against Infinity and John Does 1-20, who are the RICO "persons."

102. All loans made via www.buffalolakelending.com to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury and (b) were incurred in connection with the business of lending money at a rate

usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

103.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

104.    Buffalo Lake Lending is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

105.    The Defendants named herein are associated with this enterprise, as set forth above, in connection with the making and collecting of loans to Illinois residents.

106.    Defendants conducted or participated in the conduct of the affairs of Buffalo Lake Lending through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

107.    Plaintiffs were deprived of money as a result.

## CLASS ALLEGATIONS

108.    Plaintiffs bring this claim on behalf of a class.

109.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via www.buffalolakelending.com at more than 18% interest, (c) which loan was made on or after a date four years prior to the filing of this action.

110.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

111.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.     Whether the loans at issue are "unlawful debts" as defined in RICO;

      b.     Whether Buffalo Lake Lending is an "enterprise";

      c.     Whether Defendants are associated with Buffalo Lake Lending; and

      d.     Whether Defendants conducted or participated in the affairs of Buffalo Lake Lending through a pattern of making and collecting unlawful loans.

112. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

113. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

114. A class action is superior for the fair and efficient adjudication of this matter, in that:

      a. Individual actions are not economically feasible; and

      b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

      i. Treble damages;

      ii. Attorney's fees, litigation expenses, and costs of suit; and

      iii. Such other or further relief as the Court deems proper.

## COUNT IV – RICO

115. Plaintiffs incorporate paragraphs 1-75.

116. This claim is against Infinity and John Does 1-20, who are the RICO "persons."

117. All loans made via www.buffalolakelending.com to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

118. The loans are therefore "unlawful debts" as defined in 18 U.S.C. §1961(6).

119. Buffalo Lake Lending affects interstate commerce, in that it has physical locations outside of Illinois and makes loans to Illinois residents via the Internet.

120. Defendants agreed and conspired to operate Buffalo Lake Lending as a business engaging in lending money at more than twice the lawful rate in Illinois, in violation of 18 U.S.C. §1962(d), and did in fact so operate it.

121. Plaintiffs were deprived of money as a result.

## CLASS ALLEGATIONS

122.    Plaintiffs bring this claim on behalf of a class.

123.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made via www.buffalolakelending.com at more than 18% interest, (c) which loan was made on or after a date four years prior to the filing of this action.

124.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

125.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.    Whether the loans at issue are "unlawful debts" as defined in RICO

      b.    Whether Defendants agreed and conspired to operate Buffalo Lake Lending as a business engaged in the making and collection of loans at more than twice the lawful rate in Illinois; and

      c.    Whether Defendants carried out their agreement.

126.    Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

127.    Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

128.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible; and

      b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

      i.    Treble damages;

       ii.        Attorney's fees, litigation expenses, and costs of suit; and

       iii.      Such other or further relief as the Court deems proper.


              */s/ Daniel A. Edelman*
              Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com
Dedelman@edcombs.com
hkolbus@edcombs.com

## **<u>JURY DEMAND</u>**

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## **EXHIBITS**

A        Plaintiff Jennene Stoicescu's loan

B        Plaintiff Samantha Corbin's loan

C        www.buffalolakelending.com

D        Server Location of IP Address 169.55.60.156

E        Dustin Dernier Infinity Testimonial

F        John Humphrey Infinity Testimonial

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

-20-

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiffs, class members, the events described herein,  any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiffs, and any account or number or symbol relating to them. These materials are likely relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

*/s/ Daniel A. Edelman*
Daniel A. Edelman