# EXHIBIT B

# LOAN AGREEMENT AND PROMISSORY NOTE

**PLEASE TAKE A MOMENT TO REVIEW THIS LOAN AGREEMENT CAREFULLY. YOU WILL BE REQUIRED TO ELECTRONICALLY SIGN AND DATE IT. YOU WILL ALSO ELECTRONICALLY SIGN AND DATE THE DISBURSEMENT AND OPTIONAL RECURRING ELECTRONIC PAYMENT AUTHORIZATION.**

| Lender: | Buffalo Lake Lending | Today's Date: 02/16/2023 10:53 AM | Maturity Date: 09/15/2023 |
|---|---|---|---|
| Address: | 142 Red Horse Lodge Rd, Ft. Thompson, SD 57339 | Estimated Funding Date: 02/17/2023 | |
| **Borrower Information:** | | **Co-Borrower:** | **Loan #:** ▉70 |
| Name: | Samantha Corbin | Name: | |
| Address: | ▉ | Address: | |

**Disclosures Made in Compliance with Federal Truth in Lending Act**

| Annual Percentage Rate (APR) | Finance Charge | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 687.74% (e) | $2726.31 (e) | $950.00 | $3,676.31 (e) |

**Itemization of Amount Financed:**

| | | |
|---|---|---|
| $ | 950.00 | Amount given to you directly |
| $ | 0.00 | Amount Paid on your prior account |
| $ | 950.00 | **Amount Financed** |



PAID IN FULL
06/22/2023

**Security:** This loan is unsecured.

**Demand:** This obligation has a demand feature.

**Prepayment:** If you pay off your loan early, you will not have to pay a penalty but you will not be entitled to a refund.

**Late Charge:** We will assess a late charge of ($ 15.00 ) for each payment received (9) or more days after its due date.

See below for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Your Payment Schedule (e) will be:

| Payment Number | Due Date | Total Payment Due |
|---|---|---|
| 1 | 02/28/2023 | $262.62 |
| 2 | 03/15/2023 | $262.62 |
| 3 | 03/28/2023 | $262.62 |
| 4 | 04/14/2023 | $262.62 |
| 5 | 04/28/2023 | $262.62 |
| 6 | 05/15/2023 | $262.62 |
| 7 | 05/26/2023 | $262.62 |
| 8 | 06/15/2023 | $262.62 |
| 9 | 06/28/2023 | $262.62 |
| 10 | 07/14/2023 | $262.62 |
| 11 | 07/28/2023 | $262.62 |
| 12 | 08/15/2023 | $262.62 |

| | | |
|---|---|---|
| 13 | 08/28/2023 | $262.62 |
| 14 | 09/15/2023 | $262.25 |

**SPECIAL NOTICES:**

* **YOUR LOAN IS A VERY EXPENSIVE FORM OF BORROWING.**
* **YOU CAN SAVE FINANCE CHARGES BY PAYING OFF YOUR LOAN EARLY EITHER IN PART OR IN FULL.**
* **YOUR LOAN IS DESIGNED TO ASSIST YOU IN MEETING YOUR SHORTTERM CASH NEEDS. IT IS NOT A SOLUTION FOR LONGER-TERM FINANCIAL PROBLEMS.**
  **NON-PROFIT CREDIT COUNSELING SERVICES ARE AVAILABLE IN YOUR COMMUNITY FOR CONSUMERS EXPERIENCING FINANCIAL PROBLEMS.**
* **THIS LOAN AGREEMENT IS GOVERNED BY THE LAWS OF THE CROW CREEK SIOUX TRIBE. THERE WILL BE NO BINDING AGREEMENT FORMED BETWEEN YOU AND US UNTIL YOUR CONSENT TO THIS AGREEMENT IS RECEIVED BY US AND VERIFIED BY OUR UNDERWRITING DEPARTMENT LOCATED ON THE CROW CREEK SIOUX TRIBE INDIAN RESERVATION.**

This Loan Agreement and Promissory Note ("Agreement") is executed by and between the BORROWER and LENDER on the date set forth above. As used in this Agreement, the terms "we," "us" and "our" mean the LENDER listed above. Similarly, as used in this Agreement, the terms "you" and "your" mean the BORROWER listed above.



1. **Promise to Pay; How We May Seek Payments.** Borrower (hereinafter referred to as ("BORROWER") promises to pay to LENDER either in immediately available United States currency by mailing payments to Buffalo Lake Lending, P.O. Box 254, Ft. Thompson, SD 57339 or by any optional authorization signed by you (including the Optional Recurring Electronic Payment Authorization), the Total of Payments shown above when due in accordance with the Payment Schedule shown above, until the Amount Financed, as shown above, together with accrued and unpaid finance charges, has been fully repaid, together with any costs incurred by us in collecting said amounts. All sums due hereunder shall be paid without prior demand, notice or claim of set off. You, without penalty, have the right to prepay the outstanding balance at any time prior to maturity. You may authorize electronic payments by signing the authorization captioned "Optional Recurring Electronic Payment Authorization." **SIGNING THIS AUTHORIZATION IS COMPLETELY OPTIONAL.** Your bank may impose fees in connection with rejected payments, and you hereby agree that we do not have any liability for such fees. If you know that a payment will be rejected (because, for example, there is not enough money in your bank account), you should contact us so that we can attempt to make alternate payment arrangements. If there is any missing or erroneous information in or with your application regarding your bank or your bank account, you authorize us to verify and correct such information.
2. **Estimates in Truth in Lending Act Disclosures. LENDER had to estimate the Annual Percentage Rate, Finance Charge, Total of Payments, and Payment Schedule in the Truth in Lending Act Disclosures because we do not know exactly when the proceeds of the Loan will be credited to your bank account ("Funding Date"). We based our estimate on your Loan proceeds being disbursed on the Estimated Funding Date shown above. Delays caused by our bank or your bank, bank holidays, federal holidays, Tribal holidays, or your failure to return any calls we make to you to verify your information and other circumstances beyond our control may result in the Funding Date occurring after the Estimated Funding Date shown above that we estimate.**
3. **Interest Rate.** Interest under this Agreement will be calculated on a simple interest basis commencing on the Funding Date and shall accrue at a daily rate of 1/365th of ___699___ % multiplied by the unpaid principal balance (the Principal, less the amount the Principal has been reduced by payments) for each day that any amount remains due to LENDER. Interest is computed on the basis of the number of days actually elapsed. No additional interest will accrue beyond the scheduled due date of an installment (or the maturity date of the loan) on the portion of Principal originally scheduled to be paid.
4. **Payments.** BORROWER agrees to pay LENDER interest and "Principal" ("**Principal**" is defined as the Amount Financed, as shown above) in accordance with the Payment Schedule shown above. LENDER will apply all payments on the date received by LENDER in the following order: (1) unpaid previously- scheduled installment; (2) accrued and unpaid late charges and costs and expenses that you have agreed to pay to LENDER pursuant to this Agreement; (3) accrued but unpaid interest; and (4) unpaid Principal balance. Payments made in addition to regularly scheduled payments will be applied in the same manner. BORROWER, without penalty has the right to fully prepay the unpaid Principal balance in immediately available U.S. Currency at any time prior to maturity and will not be obligated to pay any unaccrued interest. Any prepayment (except for a prepayment in full) will not relieve BORROWER's obligation to make a later scheduled payment, according to the Payment Schedule above, until all sums due are fully repaid to LENDER.
5. **Scheduled Payment Amounts.** The Payment Schedule shown above assumes that all of your payments are made on time. If you are late making a payment, the amount of your last scheduled payment may be greater than disclosed in the Payment Schedule. Likewise, if you are late making a payment, the Finance Charge and Total of Payments may be greater than disclosed above. Interest continues to accrue on the unpaid principal balance, regardless of whether you have been charged a delinquency fee because of a delinquent payment. BORROWER, without penalty, has the right to fully prepay the unpaid principal balance at any time prior to maturity and will not be obligated to pay any unaccrued interest. Any prepayment (except for a prepayment in full) will not relieve BORROWER's obligation to make any later scheduled payment according to the Payment Schedule above, until all sums due are fully repaid to LENDER.
6. **Governing Law; Enforceability.** This Agreement and the Arbitration Agreement are governed by the laws of the Crow Creek Sioux Tribe and any applicable federal law.
7. **Late Charge.** BORROWER agrees to pay to LENDER a delinquency fee of ($15.00) for each payment that is not received by LENDER nine (9) or more days after its due date. The delinquency fee will not be collected more than once for the same default and may be collected at the time of the default or at any time thereafter. If the delinquency fee is deducted from any payment received after default occurs, and the deduction results in the default of a subsequent installment, no fee will be collected for the resulting default.
8. **Additional Products & Services.** No additional products or services are available. BORROWER understands and acknowledges that no credit insurance is offered with this Agreement.
9. **BORROWER'S Representations and Warranties; Verification.** BORROWER represents and warrants that BORROWER has the right to enter into this Agreement, is at least eighteen (18) years of age, has the financial ability to repay this loan, and that all information the BORROWER has given to LENDER is true and correct. You authorize us to verify the information you provided to us in connection with your loan application. You give us consent to obtain information about you from consumer reporting agencies or other sources at any time. We reserve the right to withhold funding of this loan, at any time prior to disbursement, to allow us to verify the information you have provided to us. You authorize us to obtain consumer reports about you now or in the future as long as you owe us money under this Agreement. We may use the consumer report for any purpose authorized by applicable law in connection with a credit transaction involving you and involving the extension of credit to you or review or collection of your account, including but not limited to: (i) for authentication purposes, to make sure you are who you say you are, (ii) to make credit decisions; (iii) to determine how much debt you currently have, in order to determine your debt-to-income ratio, and (iv) to obtain information and characteristics from your credit report from one or more consumer credit reporting agencies. We reserve the right to withhold funding of this loan, at any time prior to disbursement, to allow us to verify the information you have provided to us. We may report information about your performance under this Agreement to credit reporting agencies. Late payments, missed payments and defaults may be reported. This may negatively impact your ability to receive loans or advances from other companies or to write checks.
10. **COVERED BORROWER IDENTIFICATION STATEMENT.** You represent and warrant that you are not a regular or reserve member of the Army, Navy, Marine Corps, Air Force or Coast Guard serving on active duty under a call or order that does not specify a period of thirty (30) days or fewer. You represent and warrant that you are not a dependent of a regular or reserve member of the Army, Navy, Marine Corps, Air Force or Coast Guard serving on active duty under a call or order that does not specify a period of thirty (30) days or fewer. You understand that we will verify this statement and be making this loan in reliance on the truth of this statement.
11. **Events of Default.** The following constitute events of default under this Agreement: (a) BORROWER does not pay the full amount of any payment when due; (b) BORROWER fails to keep any of BORROWER's promises under this Agreement; or (c) any representation, warranty, or information given to the LENDER by BORROWER is false or misleading, other than any misstatement with reference to BORROWER'S credit or financial standing.
12. **LENDER's Rights in the Event of Default.** Upon the occurrence of any event of default, the LENDER may at its option, and without notice or demand, do any one or more of the following: (a) declare the entire outstanding balance due under this Agreement to be due and payable at once and proceed to collect such entire outstanding balance due; (b) exercise all other rights, powers and remedies available under applicable law; and (c) recover from BORROWER all charges, costs and expenses, including all collection costs and reasonable attorney's fees incurred or paid by the LENDER in exercising any right, power or remedy provided by this Agreement or by law. In the event of default, the interest shall continue to accrue until the unpaid Amount Financed, as shown above, together with all accrued and unpaid interest and costs, is fully repaid.
13. **General.** (a) BORROWER agrees to pay a returned check fee of ($15) for the return by a depository institution of a dishonored check, negotiable order of withdrawal or share draft; (b) the unenforceability or invalidity of any portion of this Agreement shall not render unenforceable or invalid the remaining portions hereof; (c) time is of the essence of this Agreement; and (d) this Agreement constitutes the entire Agreement between the parties, and no other agreements, representations or warranties other than those stated herein shall be binding unless reduced to writing and signed by both parties.
14. **Important Additional Disclosures.**
**(a)** The parties agree that this Agreement is made and accepted on Tribal lands pursuant to applicable federal laws and the laws of the Crow Creek Sioux Tribe

*[Watermark across page: PAID IN FULL 06/22/2023]*

and made and accepted within the jurisdiction of the Crow Creek Sioux Tribe, a sovereign, federally-recognized Indian Tribe located in the United States, regardless of your home state or relationship to the Crow Creek Sioux Tribe or its Territory.

**(b)** This Agreement and all related documents are being submitted by you to us in our capacity as a division of an economic arm instrumentality, and wholly-owned and operated entity of the Crow Creek Sioux Tribe. The Tribe is a federally-recognized Indian Tribe that possesses and enjoys, along with its governmental departments, agencies and businesses, sovereign immunity from unconsented suit. Because the Tribe is entitled to sovereign immunity, you will be limited as to what claims, if any, you may be able to assert against the Tribe, and no legal action outside of the Arbitration Agreement may be brought against the Tribe or any of its governmental departments, agencies or businesses, including Buffalo Lake Lending without the express written consent of such a party. To encourage the resolution of consumer complaints, any complaint may be submitted by you or on your behalf to the Crow Creek Tribal Consumer Financial Services Regulatory Commission, at: Crow Creek Tribal Consumer Financial Services Licensing & Regulatory Commission P.O. Box 254, Ft. Thompson, SD 57339

**(c)** Buffalo Lake Lending is a wholly-owned and operated economic arm, instrumentality, and entity of the Crow Creek Sioux Tribe, a federally-recognized Indian tribe that, along with its governmental departments, agencies and economic enterprises, possesses sovereign immunity from unconsented suit. This means that: (a) Buffalo Lake Lending is a wholly-owned economic arm and instrumentality of the Tribe; and (b) no legal action may be brought against the Tribe in general, or Buffalo Lake Lending, without the consent of that party.

**(d)** Please direct any questions or issues to our customer service department, in writing to customerservice@buffalolakelending.com or by phone to 800-835-1988, and we will do our best to promptly assist you.

15. **Credit Disputes; Identity Theft:** If you believe that any information about your loan that we have furnished to a consumer reporting agency is inaccurate, or if you believe that you have been the victim of identity theft in connection with any loan made by us, contact us immediately by writing to us at: Buffalo Lake Lending, P.O. Box 254, Ft. Thompson, SD 57339, or emailing us at customerservice@buffalolakelending.com. In your letter (i) provide your name and loan number, (ii) identify the specific information that is being disputed, (iii) explain the basis for the dispute, and (iv) provide any supporting documentation you have that substantiates the basis of the dispute. If you believe that you have been the victim of identity theft, submit an identity theft affidavit and/or identity theft report.

16. **Cancellation:** Without fee, interest, or other penalty, you may cancel your payment obligations under this Agreement, without cost or finance charges, no later than 12:00 noon Pacific Time of the next business day immediately following the Funding Date ("Cancellation Deadline"). Your right to cancel your loan only applies if your loan either hasn't funded or, if it has, the funds are returned to us as explained below. To cancel your payment obligations on this loan, you must inform us **in writing**, by or before the Cancellation Deadline, either by email to customerservice@buffalolakelending.com, that you want to cancel the future payment obligations on this loan. If we timely receive your written notice of cancellation on or before the Cancellation Deadline but before the loan proceeds have been deposited into your bank account, then we will not debit your bank account and both your and our obligations under this Agreement will be rescinded. However, if we timely receive your written notice of cancellation on or before the Cancellation Deadline but after the loan proceeds have been deposited into your bank account, then you authorize us to affect a debit to your bank account as set forth in your Optional Recurring Electronic Payment Authorization for the Principal amount of your loan. If we receive payment of the principal amount by debit of your bank account via the debit, then both your and our obligations under this Agreement will be rescinded. If we do not receive payment of the Principal amount by debit to your bank account, then this Agreement will remain in full force and effect.

17. **ARBITRATION AGREEMENT.** This Arbitration Agreement describes when and how a Claim (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. It can be a quicker and simpler way to resolve disputes.

**READ THIS ARBITRATION AGREEMENT CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED.**

**YOU HAVE THE RIGHT TO REJECT (NOT BE BOUND BY) THIS ARBITRATION AGREEMENT AS DESCRIBED BELOW.** If you do not reject this Arbitration Agreement and a Claim is arbitrated, neither you nor we will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information gathering (discovery) to the same extent as in court; (3) participate in a class action, private attorney general or other representative action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration.

**(a)** *Special Definitions:* As solely used in the Arbitration Agreement, the terms "we," "us" and "our" mean (i) the Lender (listed on the top of the first page of this Agreement), its parent companies, wholly or majority-owned subsidiaries, affiliates, successors, assigns and any of their employees, officers and directors, and (ii) any third party providing any goods and services in connection with the origination, servicing or collection of this Agreement. "You" means the Borrower listed on the top of the first page of this Agreement.

**(b)** *Your Right to Reject:* If you don't want this Arbitration Agreement to apply, you may reject it by mailing us a written rejection notice that contains all of the following: (i) the date of this Agreement; (ii) the name(s), address(es) and phone number(s) of the Borrower for this Agreement; and (iii) a statement that the Borrower rejects the Arbitration Agreement of this Agreement. The rejection notice must be sent by certified mail, return receipt requested, to Buffalo Lake Lending, P.O. Box 254, Ft. Thompson, SD 57339, Attn: Arbitration Rejection Notice. A rejection notice is only effective if it is signed by the Borrower and if we receive it within thirty (30) days after the date of this Agreement. If you reject this Arbitration Agreement, that will not affect any other provision of this Agreement or the status of your Agreement. If you don't reject this Arbitration Agreement, it will be effective as of the date of the Agreement. If you reject this Arbitration Agreement, that will not constitute a rejection of any prior arbitration agreement between you and us. Even if you previously rejected an arbitration agreement between you and us, you will be bound by this Arbitration Agreement unless you reject it. In the event you opt out of the Arbitration Agreement, any disputes under this agreement or related to your loan shall nonetheless be governed under the laws of the Crow Creek Sioux Tribe and applicable federal law and must be brought within the Courts of the Crow Creek Sioux Tribe to whose jurisdiction you irrevocably consent for purposes of this agreement.

**(c)** *What Claims Are Covered:* "Claim" means any claim, dispute or controversy between you and us, whether preexisting, present or future, that in any way arises from or relates to this Agreement, any prior loan or loans you obtained from us, the events leading up to the Agreement or any prior loan (for example, any disclosures, advertisements, promotions or oral or written statements made by us), any product or service provided by us or third parties in connection with the Agreement, the collection of amounts due and the manner of collection, our use or disclosure of information about you or your loan(s), or the relationships resulting from any of the foregoing. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims, federal, state, local and administrative claims and claims which arose before the effective date of this Arbitration Agreement. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, statute, regulation, ordinance, common law and equity and claims for monetary damages and injunctive or declaratory relief. However, "Claim" does not include: (i) any dispute or controversy about the validity, enforceability, coverage or scope of this Arbitration Agreement or any part thereof (including, without limitation, the definition of "Claim," the Class Action Waiver in subparagraph (h) below; subparts (A) and (B) of subparagraph (n) below titled "Severability and Survival" and/or this sentence); all such controversies are for a court and not an arbitrator to decide. But any dispute or controversy that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide; (ii) the exercising of any self-help or non-judicial remedies by you or us; (iii) any individual action in court by one party to prevent the other party from using a self-help remedy, as opposed to any related request for damages or monetary relief of any kind, which is a "Claim"; or (iv) any individual action brought by you or us in Crow Creek Sioux Tribal court. However, if that tribal court action is transferred, removed or appealed to a different court, you or we then have the right to choose arbitration. Moreover, this Arbitration Agreement will not apply to any Claims that are the subject of a class action filed in court that is pending as of the effective date of this Arbitration Agreement in which you are alleged to be a member of the putative class for as long as such class action is pending. In addition to offering loans such as represented by this Agreement, Lender from time to time may offer other loans and/or products. If you are also a party to any other loan agreement of any type with Lender, the arbitration agreement in any such loan agreement shall apply to that loan agreement.

**(d)** *Electing Arbitration; Starting an Arbitration Proceeding:* Either you or we may elect to arbitrate a Claim by giving the other party written notice of the intent to arbitrate the Claim or by filing a motion to compel arbitration of the Claim. This notice may be given before or after a lawsuit has been filed concerning the Claim or with respect to other Claims brought later in the lawsuit, and it may be given by papers filed in the lawsuit. Each of the arbitration administrators listed below has specific rules for starting an arbitration proceeding. Regardless of who elected arbitration or how arbitration was elected, the party asserting the Claim (i.e., the party seeking money damages or other relief from a court or an arbitrator) is responsible for starting the arbitration proceeding. Thus, if you assert a Claim against us in court, and we elect to arbitrate that Claim by filing a motion to compel arbitration which motion is then granted by the court, you will be responsible for starting the arbitration proceeding. Even if all parties have opted to litigate a Claim in court, you or we may elect arbitration with respect to any Claim made by a new party or any Claim later asserted by a party in that or any related or unrelated lawsuit (including a Claim initially asserted on an individual basis but modified to be asserted on a class, representative or multi-party basis). Nothing in any such litigation shall constitute a waiver of any rights under this Arbitration Agreement.

**(e)** *Arbitration Defined.* Arbitration is a means of having an independent third party resolve a dispute. A "Claim" is any controversy or claim related in any way to your loan or your application for a loan, involving you and Lender, its servicer, marketing agent, collection agent, any subsequent holder of your loan, or any of their respective agents, affiliates, assigns, employees, officers, managers, members or shareholders (each considered a "Holder" for purposes of this Agreement). The term Claim is to be given its broadest possible meaning and includes, without limitation, all disputes, claims or demands (whether past, present, or future, including events that occurred prior to your Agreement or loan), based on any legal or equitable theory (tort, contract, or otherwise), and regardless of the type of relief sought (i.e., money, injunctive relief, or declaratory relief). A Claim includes, by way of example and without limitation, any claim or dispute arising from, related to or based upon marketing or solicitations to obtain a loan and the handling or servicing of your loan whether such Claim is based on a Tribal, federal or state constitution, statute, ordinance, regulation, or common law, and including any issue concerning the validity, enforceability, or scope of this Agreement or the Arbitration Agreement.

**(f)** *Agreement to Arbitrate.* You agree that any Claim (as defined herein) will be resolved by arbitration in accordance with Tribal Law and applicable federal law.

- **You acknowledge and agree that by entering into this Arbitration Agreement:**

(1) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY CLAIM ALLEGED AGAINST US OR RELATED THIRD PARTIES;
(2) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT RESOLVE ANY CLAIM ALLEGED AGAINST US OR ANY HOLDER; and
(3) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

**(g) Choice of Arbitrator.** Any party to a Claim, including a Holder, may send the other party written notice by certified mail return receipt requested at the address appearing at the top of the Agreement of their intent to arbitrate and setting forth the subject of the dispute or Claim along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select any of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org; JAMS (1-800-352-5267) http://www.jamsadr.com; or an arbitration organization agreed upon by you and the other parties to the dispute. The chosen arbitrator will utilize the rules and procedures applicable to consumer disputes of the chosen arbitration organization, but only to the extent that those rules and procedures are consistent with the terms of this Agreement, Crow Creek Sioux Tribal Law and applicable federal law. The party receiving notice of Arbitration will respond in writing by certified mail return receipt requested within twenty (20) days. You understand that if you demand Arbitration, you must inform us of your demand and of the arbitration organization you have selected. You also understand that if you fail to notify us, then we have the right to select the arbitration organization in accordance with Tribal Law or applicable federal law. Any arbitration under this Agreement may be conducted either on Tribal land or within thirty miles of your residence, at your choice, provided that this accommodation for you shall not be construed in any way (a) as a relinquishment or waiver of the Tribe's sovereign status or immunity, or (b) to allow for the application of any law other than Crow Creek Sioux Tribal Law or applicable federal law.

PAID IN FULL 06/22/2023

**(h) Waiver of Jury Trial and Waiver of Ability to Participate in a Class Action.** YOU HEREBY AGREE THAT YOU ARE WAIVING YOUR RIGHT TO A JURY TRIAL, TO HAVE A COURT DECIDE YOUR DISPUTE, AND YOU ARE WAIVING YOUR ABILITY TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, TO PARTICIPATE IN A CLASS ACTION LAWSUIT, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION, AND TO CERTAIN DISCOVERY AND OTHER PROCEDURES THAT WOULD BE AVAILABLE IN A LAWSUIT. The arbitrator has the ability to award all remedies available under Tribal Law and applicable federal law, whether at law or in equity, to the prevailing party, except that the parties agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual Claims between the parties. The validity, effect, and enforceability of this waiver of class action lawsuit and class-wide arbitration is to be determined by the arbitrator. If the arbitrator fails or refuses to enforce the waiver of class-wide arbitration, the parties agree that the Claim will proceed in Crow Creek Sioux Tribal court and will be decided by a Crow Creek Sioux Tribal court judge, sitting without a jury, under applicable court rules and procedures and may be enforced by such court through any measures or reciprocity provisions available. As an integral component of accepting this Agreement, you consent to the jurisdiction of the Crow Creek Sioux Tribal courts for purposes of this Agreement.

**(i) Judicial Review.** The arbitrator will apply the terms of this Agreement, including the Arbitration Agreement, Crow Creek Sioux Tribal Law, and applicable federal law, as appropriate. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. If allowed by Crow Creek Sioux Tribal or applicable federal statute, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. The arbitrator will make written findings and the arbitrator's award may be filed with the Crow Creek Sioux Tribal court. The arbitration award will be supported by substantial evidence and must be consistent with this Agreement, Crow Creek Sioux Tribal law and applicable federal law or may be set aside by the Crow Creek Sioux Tribal court upon judicial review.

**(j) Cost of Arbitration:** We will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the arbitration. Except where otherwise provided by Crow Creek Sioux Tribal Law or applicable federal law, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by Tribal Law or applicable federal law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

**(k) What Law the Arbitrator will Apply:** This Agreement and the Arbitration Agreement are governed by the laws of the Crow Creek Sioux Tribe, and any applicable federal law.

**(l) Arbitration Result and Right of Appeal:** At the timely request of either party, the arbitrator shall write a brief explanation of the grounds for the decision. Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision is final and binding, except for a right of appeal, if any, provided under applicable federal law or Crow Creek Sioux Tribal law. However if the amount of the Claim exceeds $50,000, any party can, within fourteen (14) days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Agreement to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with subparagraph (j) above, captioned "Costs of Arbitration." Any final decision of the appeal panel is subject to judicial review only as provided under applicable federal law or Crow Creek Sioux Tribal law. No arbitration award involving the parties will have any preclusive effect as to issues or claims in any dispute involving anyone who is not a party to the arbitration, nor will an arbitration award in prior disputes involving other parties have preclusive effect in an arbitration between the parties to this Arbitration Agreement.

**(m) Other Provisions.** This Arbitration Agreement will survive: (i) termination or changes in this Agreement, your loan, or the relationship between us concerning your loan; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your loan, or any amounts owed on your loan, to any other person or entity. This Arbitration Agreement benefits and is binding upon you, your respective heirs, successors and assigns. It also benefits and is binding upon us, our successors and assigns, and related third parties. The Arbitration Agreement continues in full force and effect, even if your obligations have been partially paid, paid in full or discharged through bankruptcy. The Arbitration Agreement survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing. If any provision of this Arbitration Agreement is held invalid, the remainder of this Arbitration Agreement shall remain in effect. This Agreement may not be assigned by You. We may assign or transfer this Agreement and our related rights and obligations without notice to you and your consent is not required if we make such an assignment or transfer. If we make such an assignment or transfer, our related rights and obligations transfer to an assignee, who may continue to collect payments from you as set forth in this Agreement.

**(n) Conflicts:** Arbitration of a Claim must comply with this Arbitration Agreement. In the event of a conflict between the provisions of this Arbitration Agreement, on the one hand, and any applicable rules of the AAA or JAMS or other administrator used or any other terms of this Agreement, on the other hand, the provisions of this Arbitration Agreement shall control. This Arbitration Agreement supersedes any other arbitration agreement between the parties that may otherwise be applicable.

**(o)** *Right to Discovery:* In addition to the parties' rights to obtain discovery pursuant to the arbitration rules of the administrator, either party may submit a written request to the arbitrator to expand the scope of discovery normally allowable under the arbitration rules of the administrator. The arbitrator shall have discretion to grant or deny that request.

**(p)** *Severability and Survival:* If any part of this Arbitration Agreement is deemed or found to be unenforceable for any reason, the remainder shall be enforceable, except that:

(A) The parties acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between them and is non-severable from this Arbitration Agreement. If the Class Action Waiver is limited, voided or found unenforceable, then this Arbitration Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. The parties acknowledge and agree that under no circumstances will a class action be arbitrated; and

(B) if a Claim is brought seeking public injunctive relief and a court of competent jurisdiction determines that the restrictions in the Class Action Waiver or elsewhere in this Arbitration Agreement prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such Claim (and that determination becomes final after all appeals have been exhausted), the Claim for public injunctive relief will be determined in court and any individual Claims seeking monetary relief will be arbitrated. In such a case the parties will request that the court stay the Claim for public injunctive relief until the arbitration award pertaining to individual relief has been entered in court. In no event will a Claim for public injunctive relief be arbitrated.

This Arbitration Agreement shall survive the repayment of all amounts owed under this Agreement, any legal proceeding, or any use of a self-help remedy by us to collect a debt owed by you to us, and any bankruptcy by you, to the extent consistent with applicable federal and/or tribal bankruptcy law.

PAID IN FULL 06/22/2023

**(q)** *Notice and Cure; Special Payment:* Prior to initiating a Claim, you may send us a written Dispute Claim Notice. In order for a Dispute Claim Notice to be valid and effective, it must: (a) state your name, address and Loan Number; (b) be signed by you; (c) describe the basis of your Claim and the amount you would accept to resolve the Claim; (d) state that you are exercising your rights under the "Notice and Cure" paragraph of the Arbitration Agreement; and (r) be sent to us by certified mail, return receipt requested, at Buffalo Lake Lending, P.O. Box 254, Ft. Thompson, SD 57339, Attn: Dispute Claim Notice. This is the only method by which you can submit a Dispute Claim Notice. You must give us a reasonable opportunity, not less than 30 days, to resolve the Claim. If, and only if, (i) you submit a Dispute Claim Notice in accordance with this paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request before an arbitrator is appointed; and (iv) the matter then proceeds to arbitration and the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a maximum award of $7,500 (not including any arbitration fees and attorneys' fees and costs to which you may also be entitled).



BY ENTERING YOUR NAME AND CLICKING THE "I AGREE" BUTTON BELOW, YOU ARE ELECTRONICALLY SIGNING THIS LOAN AGREEMENT AND AGREEING TO ALL THE TERMS OF THIS LOAN AGREEMENT INCLUDING:

* THE ARBITRATION AGREEMENT
* THE COVERED BORROWER IDENTIFICATION STATEMENT
* PRIVACY POLICY

DO NOT SIGN THIS AGREEMENT UNLESS YOU HAVE READ IT, INCLUDING THE ARBITRATION AGREEMENT, OR IF IT HAS ANY BLANKS. YOU WILL RECEIVE A COPY OF THIS AGREEMENT.



Borrower

LENDER

by: Its Authorized Representative

PAID IN FULL
06/22/2023

**Authorization to Deliver Advertisements or Telemarketing Messages Using Text Messages, E-Mails & Other Electronic Communications**

You hereby authorize us to deliver or cause to be delivered to you advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. You hereby further authorize us to deliver these messages via emails, text messages and other electronic communications (collectively, "Electronic Communications") to the telephone number and email listed below. To receive such Electronic Communications, you must provide a valid email address, telephone number or other contact information for an applicable communications device. You should be aware that your wireless provider or other communications carrier may charge you applicable text messaging rates for each text message or other electronic communication that is sent to you or received by you. You represent to us that you are the owner or an authorized user of the wireless or other communications device for which you have provided an email address, a telephone number or other contact information. You understand that receipt of this loan is not conditioned upon your consent to this authorization.

**OPTING OUT OF ELECTRONIC COMMUNICATIONS:** You are not required to consent to advertising or marketing Electronic Communications to obtain credit or other services from us. At any time, you may withdraw your consent to receive advertising or marketing Electronic Communications to the mobile number provided by calling us at 800-835-1988 or emailing us at customerservice@buffalolakelending.com If you wish to stop receiving all Electronic Communications including operational, advertising, or telemarketing text messages, including those with information about payment due dates or missed payments, type "STOP ALL" in the reply text you send to us. Any withdrawal of your consent to receive such Electronic Communications will be effective after twenty-four (24) hours from receipt of such message. You understand that: any Electronic Communications we send you may be accessed by anyone with access to your Electronic Communications ; and your mobile phone service provider may charge you fees for Electronic Communications that we send you, and you agree that we shall have no liability for the cost of any Electronic Communications.

- Your email address: ███████████

- Your mobile phone number: ███████████

- Your Signature: ███████████   -Date:  02/16/2023 10:53 AM

PAID IN FULL
06/22/2023

**OPTIONAL RECURRING ELECTRONIC PAYMENT AUTHORIZATION**
**PAGE 1 OF 3**

In accordance with the provisions of the Loan Agreement and Promissory Note (the "Agreement") captioned "Promise to Pay; How We May Seek Payments," you authorize the following:

*Authorization for Scheduled Payments, Dishonored Check Fees, Late Fees, and Accrued Interest.* You authorize us (which includes, for the purposes of these Payment Authorizations, our agents, service providers, successors and assigns) to seek payment on or after each Payment Due Date for the amount due on each such Payment Due Date (see page two of this authorization for Authorized Payment Schedule) (or such modified amounts we may later agree to) by one of the following methods: (a) initiating an electronic debit to the deposit account that you provided in the application process and as identified below, or any subsequent deposit account you provide to us (your "Deposit Account"); (b) creating and presenting/depositing a remotely created check ("RCC") drawn on your Deposit Account; (RCCs generally look like checks you would write, but they do not have your signature. They generally post to your Deposit Account in the same way as regular checks you write.); or (c) initiating a charge to the debit card that you provided in the application process and as identified below, or any payment card you subsequently provide to us (your "Card"). You further authorize us to seek payment for any late fee, dishonored check fee, or additional accrued interest (if any) due under this Agreement on or after the date it is assessed via any authorized payment method then in effect for your scheduled payments (i.e., by electronic debit to your Deposit Account, RCC or a charge to your Card). If any payment subject to this Authorization is returned unpaid, you authorize us to reinitiate such payment up to two additional times (or any greater number of times permitted by applicable network rules).

*Payment Method:*
▢ Account Number: ▇▇▇▇▇▇▇▇ ;Routing Number: ▇▇▇▇▇▇▇
▢ *Card.* Card Number:

*Authorization to Correct Errors and Modify Payments.* In the event we make an error in seeking any payment you authorize, you authorize us to correct the error by crediting or debiting your Deposit Account or Card in the amount of the error on or after the date any such error occurs. Instead of or in addition to any payments described above, you authorize us to seek payment from the Deposit Account or Card for any amount and on any date that you subsequently confirm by phone, text message or email.

*Authorization to Vary Amounts of Payments.* You have the right to receive written notice if any payment we seek will vary from the amount authorized above. To exercise this right, please send a written request to Buffalo Lake Lending, LLC Attn.: Electronic Payment Notice, P.O. Box 254, Ft. Thompson, SD 57339 ("Notice Address"). Unless you exercise this right, you authorize us to vary the amount of the payment we seek for any scheduled payment without notice, so long as such payment is at least 10% and no more than the amount you authorize above plus any accrued and unpaid payments, fees and interest.

*Authorization for Accelerated Balance.* In the event that you default and we declare your entire outstanding balance immediately due and payable, you authorize us to seek payment of the entire accelerated balance (or a portion thereof) on or after the date we accelerate via any authorized payment method then in effect for payment of any scheduled payments (i.e., by electronic debit to your Deposit Account, RCC or charge to your Card).

*Bank Imposed Fees.* You understand that your financial institution may charge you a fee, in addition to any returned check fee you may owe us, if any payment authorized above is dishonored or returned unpaid, and you agree that we will have no liability regarding any such fees. IN THE EVENT THAT YOU BECOME AWARE THAT YOU DO NOT HAVE SUFFICIENT FUNDS TO COVER A PAYMENT AUTHORIZED IN THESE PAYMENT AUTHORIZATIONS, PLEASE CONTACT US AS SOON AS POSSIBLE SO THAT WE CAN TRY TO MAKE ALTERNATIVE ARRANGEMENTS WITH RESPECT TO THAT PAYMENT.

*Revoking this Authorization.* You understand and acknowledge that you may terminate this authorization by contacting us directly at the address or phone number listed on the first page of the Agreement in such time as to afford us and your bank a reasonable opportunity to act on your request. We will comply with any termination request within three business days after receiving the request. Terminating the authorization does not affect your obligation to repay the amount due under the Agreement.

*Miscellaneous.* You certify that you are an authorized signor on the Deposit Account or an authorized user of the Card. If you inadvertently transpose a digit or make a similar error in providing us with information about a payment method, you authorize us to correct the error after verifying the information with you. Each charge to a Card will be processed in U.S. dollars, and, if a charge is converted into another currency, its amount may vary based on fluctuations in the applicable conversion rate. You acknowledge that the origination of any electronic debit transaction to your Deposit Account is subject to applicable law and network rules.

By signing below, you authorize us to initiate the above-described transactions and acknowledge that you have read, understand and agree to be bound by the terms of this Authorization. **You acknowledge and understand that you do not have to sign this Authorization to get a loan from us.**

YOUR Signature: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*[Watermark across page: PAID IN FULL 06/22/2023]*

**OPTIONAL RECURRING ELECTRONIC PAYMENT AUTHORIZATION**
**PAGE 2 OF 3**

**AUTHORIZED PAYMENT SCHEDULE**

| Payment Due Date | Total Scheduled Payment | Payment Due Date | Total Scheduled Payment |
|---|---|---|---|
| 02/28/2023 | $262.62 | 06/15/2023 | 262.62 |
| 03/15/2023 | $262.62 | 06/28/2023 | 262.62 |
| 03/28/2023 | $262.62 | 07/14/2023 | 262.62 |
| 04/14/2023 | $262.62 | 07/28/2023 | 262.62 |
| 04/28/2023 | $262.62 | 08/15/2023 | 262.62 |
| 05/15/2023 | $262.62 | 08/28/2023 | 262.62 |
| 05/26/2023 | $262.62 | 09/15/2023 | 262.25 |



PAID IN FULL 06/22/2023

**Privacy Policy**

**Facts:** What does Buffalo Lake Lending do with your personal information?

**Why?** Financial companies choose how they share your personal information. Consumers have the right to limit some but not all sharing. This notice tells you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do.

**What?** The types of personal information we collect and share depend on the product or service you have with us. This information can include:

* Social Security number and checking account information
* Payment history and income
* Employment information and wire transfer instructions

**How?** All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers personal information; the reason Buffalo Lake Lending chooses to share; and whether you can limit this sharing.

| Reasons We can share Your personal information | Do We Share? | Can You Limit This Sharing? |
|---|---|---|
| For our everyday business purposes such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus. | YES | NO |
| For our marketing purposes to offer our products and services to you | YES | NO |
| For joint marketing with other financial companies | NO | WE DO NOT SHARE |
| For our affiliates everyday business purposes information about your transactions and experiences | YES | NO |
| For our affiliates everyday business purposes information about your creditworthiness | YES | YES |
| For our affiliates to market to you | YES | YES |

| To limit our sharing | * Call 800-835-1988 and our menu will prompt you through your choices<br>* Visit us on the web http://buffalolakelending.com<br>* Contact us via email at customer_service@buffalolakelending.com<br><br>Please note: If you are a new customer, we can begin sharing your information thirty (30) days from the date we sent this notice. When you are no longer our customer, we can share your information as described in this notice. However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call 800-835-1988 or visit http://buffalolakelending.com |

| Who We are: | |
|---|---|
| Who is providing this notice? | Buffalo Lake Lending, a wholly-owned and operated economic arm, instrumentality, and entity of the Crow Creek Sioux Tribe, a federally-recognized Indian Tribe, is providing this privacy policy. |

| What We do: | |
|---|---|
| How does Buffalo Lake Lending protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures. These measures include computer safeguards and secured files and buildings. |

| | |
|---|---|
| How does Buffalo Lake Lending collect my personal information? | We collect your personal information, for example, when you:<br><br>* Apply for a loan<br>* Give us your income information<br>* Tell us where to send the money<br>* Provide account information<br>* Provide employment information<br>* We also collect your personal information from other entities, such as credit bureaus, affiliates and/or other companies. |
| Why can't I limit all sharing? | You have the right to limit only<br><br>* sharing for affiliates' everyday business purposes information about your creditworthiness<br>* affiliates from using your information to market to you<br>* sharing for nonaffiliates to market to you |

| **Definitions:** | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>*Our affiliates include other business entities of the Tribe.* |
| Non-affiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>*Bison Lending DBA Buffalo Lake Lending does not jointly market.* |

# REMINDER TO BORROWER AND
# ACKNOWLEDGMENT OF ABILITY TO REPAY LOAN

1. This is an installment loan. It is repaid by making a series of approximately equal payments.* The Annual Percentage Rate on this loan is ___687.74%___

2. Although the loan is structured as an installment loan, we encourage you to pay more than your scheduled payment on each installment so that you pay off your loan more quickly.

3. All interest due must be paid before any payment will be credited toward the reduction of principal.

4. **Please note, this is a high interest loan. You should go to another source if you have the ability to borrow at less than the Annual Percentage Rate shown above.**

5. **ACKNOWLEDGEMENT OF LOAN DOCUMENTS.** By signing below you hereby acknowledge that you have reviewed and executed a full and complete set of loan documents and will download a copy of the executed loan documents at the end of this online session, or through the customer portal.

6. **ACKNOWLEDGMENT OF ABILITY TO REPAY LOAN.** By signing below you hereby acknowledge that you have given true and correct information concerning your income, other monthly obligations and employment. You further acknowledge that given this information you believe you have the ability to repay this loan.

I have read the above, including the **ACKNOWLEDGMENT OF ABILITY TO REPAY LOAN** and I understand its contents.

_____                                   DATE: 02/16/2023 10:53 AM
BORROWER

*PAID IN FULL 06/22/2023*

* Check your loan agreement for the exact amount of your payments and other terms and conditions.

Page 14 of 14